People v Keith (2017 NY Slip Op 07275)





People v Keith


2017 NY Slip Op 07275


Decided on October 18, 2017


Appellate Division, Second Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on October 18, 2017
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

RANDALL T. ENG, P.J.
L. PRISCILLA HALL
JEFFREY A. COHEN
FRANCESCA E. CONNOLLY, JJ.


2015-07688
 (Ind. No. 1369/13)

[*1]The People of the State of New York, respondent, 
v
Vaughn Keith, appellant.


Mischel & Horn, P.C., New York, NY (Richard E. Mischel and Gail Jacobs of counsel), for appellant.
Eric Gonzalez, Acting District Attorney, Brooklyn, NY (Leonard Joblove, Solomon Neubort, and John C. Carroll of counsel), for respondent.



DECISION & ORDER
Appeal by the defendant from a judgment of the Supreme Court, Kings County (Harrington, J.), rendered August 3, 2015, convicting him of manslaughter in the second degree and assault in the second degree, upon a jury verdict, and sentencing him to an indeterminate term of imprisonment of 3 to 10 years on the conviction of manslaughter in the second degree, and a concurrent determinate term of imprisonment of 3 years, to be followed by 3 years of postrelease supervision, on the conviction of assault in the second degree.
ORDERED that the judgment is modified, as a matter of discretion in the interest of justice, by reducing the sentence imposed on the conviction of manslaughter in the second degree from an indeterminate term of imprisonment of 3 to 10 years to an intermediate term of imprisonment of 2 to 6 years, and by reducing the sentence imposed on the conviction of assault in the second degree from a determinate term of imprisonment of 3 years, to be followed by 3 years of postrelease supervision, to a determinate term of imprisonment of 2 years, to be followed by 2 years of postrelease supervision; as so modified, the judgment is affirmed.
Viewing the evidence in the light most favorable to the prosecution (see People v Contes, 60 NY2d 620), we find that it was legally sufficient to establish the defendant's guilt of manslaughter in the second degree and assault in the second degree beyond a reasonable doubt. Specifically, the evidence was legally sufficient to prove causation (see Penal Law § 125.20[1]; People v McFadden, 168 AD2d 461, 461) and to disprove justification (see Penal Law § 35.15[2][a]; People v Williams, 136 AD3d 637). Moreover, in fulfilling our responsibility to conduct an independent review of the weight of the evidence (see CPL 470.15[5]; People v Danielson, 9 NY3d 342), we nevertheless accord great deference to the jury's opportunity to view the witnesses, hear the testimony, and observe demeanor (see People v Mateo, 2 NY3d 383). Upon reviewing the record, we are satisfied that the verdict of guilt and the rejection of the justification defense were not against the weight of the evidence (see People v Romero, 7 NY3d 633; People v Rosado, 134 AD3d 1133).
The defendant's contention as to the propriety of the People's cross-examination of a character witness is without merit (see People v West, 271 AD2d 806).
The sentence imposed was excessive to the extent indicated herein, due to a number of mitigating factors fully set forth in the record (see People v Suitte, 90 AD2d 80, 83-84).
HALL, COHEN and CONNOLLY, JJ., concur.
ENG, P.J., dissents, in part, and votes to affirm the judgment appealed from, with the following memorandum:
I respectfully dissent from so much of the majority's determination as modifies the judgment, as a matter of discretion in the interest of justice, by reducing the defendant's sentence.
The defendant was convicted of manslaughter in the second degree and assault in the second degree in connection with the death of Willie Davis, a 69-year-old man who suffered from cancer and diabetes, and often experienced periods of confusion. The evidence presented at trial reveals that on the morning of January 30, 2015, Davis mistook the defendant's brownstone for his own nearby residence, walked up the steps to the front door, and began trying to unlock the door with his keys. The 32-year-old defendant, who was seated in his car across the street, observed Davis trying to get into the brownstone, and walked over to confront him. The defendant asked Davis what he was doing there, and Davis replied that he lived in the brownstone. According to the testimony of two eyewitnesses, the defendant yelled at Davis and punched him in the face. The force of the blow caused Davis to stagger and hold onto the handrail. The defendant then punched Davis a second time, causing Davis to fall down the steps to the concrete pavement. Davis suffered injuries including a fracture of his left cheekbone, fractures to bones behind his left eye socket, and a subdural hematoma. He died of his injuries five months later.
At the defendant's sentencing, the Supreme Court heard victim impact statements from several members of the Davis family, who noted that the defendant had taken "the life of a son, a brother, a husband, a father, a grandfather, a great grandfather, an uncle, a cousin, and a friend," and asked for the imposition of the maximum sentence. The defendant apologized to the Davis family, and asked for their forgiveness. Defense counsel urged the court to impose the minimum sentence, pointing out that despite a difficult childhood, the defendant had attended college and been employed by the New York City Sanitation Department for more than 10 years, and that he had two children with a third child due shortly. Defense counsel also provided the court with 20 letters of support from supervisors, coworkers, and neighbors. Prior to imposing sentence, the court stated that it was "presented with [a] tragedy for both families," but more so for the Davis family, since their loved one was no longer with them. After explaining its reasons as to why it would be inappropriate to sentence the defendant to either the minimum or maximum permissible terms, the court, "taking into account the totality of the circumstances," and the defendant's "character," sentenced him to a term of imprisonment of 3 to 10 years for manslaughter in the second degree, to run concurrently with a term of imprisonment of 3 years, to be followed by 3 years of postrelease supervision, for assault in the second degree.
"The determination of an appropriate sentence requires the exercise of discretion after due consideration given to, among other things, the crime charged, the particular circumstances of the individual before the court and the purpose of a penal sanction, i.e., societal protection, rehabilitation, and deterrence" (People v Farrar, 52 NY2d 302, 305-306). Indeed, among the declared legislative purposes underlying the 1965 enactment of the Penal Law are "[t]o provide for an appropriate public response to particular offenses, including consideration of the consequences of the offense for the victim . . . the victim's family, and the community," and "[t]o insure the public safety by preventing the commission of offenses through the deterrent influence of the sentences authorized, the rehabilitation of those convicted, the promotion of their successful and productive reentry and reintegration into society, and their confinement when required in the interests of public protection" (Penal Law § 1.05[5], [6]). Although the sentencing court is charged, in the first instance, with the responsibility to "perform the delicate balancing necessary to accommodate the public and private interests represented in the criminal process" (People v Farrar, 52 NY2d at 306), the intermediate appellate courts of this State have "broad, plenary power to modify a sentence that is unduly harsh or severe," and may do so "if the interest of justice warrants, without deference to [*2]the sentencing court" (People v Delgado, 80 NY2d 780, 783).
Here, the Supreme Court imposed terms of imprisonment that fell in the middle of the statutorily permissible range. It did so after hearing from members of the victim's family, acknowledging letters of support offered by defense counsel, and carefully balancing the defendant's personal circumstances against the gravity of his crimes and the impact of his crimes upon the victim's family. Although this Court is nevertheless empowered to reduce the defendant's sentence if it deems it unduly harsh or excessive, I cannot agree that this is the case here. The defendant bears criminal responsibility for conduct that resulted in the death of an elderly man in ill health who was powerless to ward off his blows. While the defendant had no prior criminal history and had been steadily employed for more than 10 years, these considerations must be weighed against the larger societal interests at stake in the sentencing process. Taking these interests into account, in my view, it cannot be said that the interest of justice warrants a reduction in the defendant's sentence (see People v Suitte, 90 AD2d 80).
ENTER:
Aprilanne Agostino
Clerk of the Court